### Commonwealth v. Martin

*Randolph A. Warden,* for Commonwealth.

*Cassin W. Craig* and *Anthony J. Giangiulio,* for defendant.

KNIGHT, P. J., September 24, 1957.—Defendant was convicted on a bill of indictment charging him with making and drawing a worthless check and uttering and delivering a worthless check. He then filed this motion which came before the court en banc.

As the verdict was guilty, we must state the essential facts as developed from the evidence of the Commonwealth. So stated the facts are as follows: Defendant is a general contractor who had a contract with the Jomarly Corporation for the erection of a large building in Lansdale to be occupied by W. T. Grant and Company. Before the work was commenced, a waiver of liens, executed by defendant and the Jomarly Corporation, was filed of record at Norristown. By the waiver, defendant waived the right to file a lien on behalf of himself and his subcontractors.

John W. Snyder is a painting contractor who had a subcontract with defendant to do the painting work on the Grant store; the contract price was $2,500. The contract between Snyder and defendant called for payments on account as the work progressed, but defendant failed to make these payments, informing Snyder that he had not received payments due him from the Jomarly Corporation. The contract between the Jomarly Corporation and defendant required defendant to deliver to the Jomarly Corporation a re-

lease of liens executed by all subcontractors and materialmen before the defendant could receive payment on the Grant store job.

On September 19, 1956, defendant called at the office of Mr. Snyder. He brought with him a release of liens and an undated check for $2,500. Mr. Snyder was not in so defendant left the release and check with his secretary. When Snyder returned, he noticed that the check was not dated and he told his secretary to fill in the date, September 19, 1957. Mr. Snyder called up defendant that night and told him that he had caused the date to be filled in. The check for $2,500 was deposited by Snyder on September 21, 1956, and was returned marked "not sufficient funds" by the Harleysville National Bank, on which it was drawn. Snyder called up defendant and wrote him several times and defendant promised to make the check good. Defendant's balance in the Harleysville National Bank on September 18, 1956, was $988.12; on the 19th, $816.20; on the 20th, $91.20; on the 21st, $404.33; on the 24th, $382.13; and on the 25th, $382.13. Subsequently to September 25, 1956, defendant went into bankruptcy.

Mr. Snyder testified as follows:

"Q. What response if any did you get from Mr. Martin from your rendering the bill? Did you hear from him at all?

"A. The eighteenth, the evening of the eighteenth of September at my home I received a telephone call from him. He said he had my check for $2500 and a release of liens for me to sign on the job."

Mr. Snyder testified that defendant told him:

"Well, I will be in tomorrow and drop the release of liens off and your check, and when you come in you can sign it. Pick up your check and sign the release of liens."

"Q. Well now Mr. Snyder will you answer his Honor's question. What influenced you not to sign the release of liens if anything?

"A. The only reason I signed the release of liens was because I was getting paid the money that was coming to me."

Snyder had no actual notice of the waiver of liens until after he signed the release.

In support of his motion in arrest of judgment, defendant has assigned five reasons. These reasons we think can be stated briefly as follows: The check was given for a past consideration; Snyder parted with nothing of value as a consideration for the check; the check with a blank date was equivalent of a postdated check.

The Penal Code of June 24, 1939, P. L. 872, Sec. 854, provides:

"Whoever, with intent to defraud, makes, draws, utters or delivers any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering, or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, although no express representation is made in reference thereto, is guilty of a misdemeanor."

It is well settled that a postdated check does not come within the purview of the above act. It is a mere promise to pay in the future. We cannot agree, however, that a check not dated is equivalent to a postdated check. When an undated check is delivered to the payee thereof, the maker is presumed to authorize the payee to fill in the date. This the payee did in the present case and on the same day notified the maker, defendant, that he had filled in the date.

It is well settled that a check given for a past consideration is not within the scope of the above act. If the entire consideration for the check for $2,500 was the painting job, then this check was given for a past consideration and Snyder parted with nothing of value for the check. This argument, however, ignores the release of liens. It is true that a waiver of liens was filed before the work on the Grant store was commenced and this waiver would be an effective defense to any lien filed by Snyder, for he had constructive notice of the waiver. He had no *actual* notice of the waiver until after he had signed the release and received the worthless check. Therefore, there can be little or no doubt that when he signed the release he *believed* he was giving up his right to lien and that this was the reason and consideration for his signing the release.

Taking, however, the uncontradicted testimony, the agreement between the Jomarly Corporation and defendant, required defendant to produce a release of liens before he received his final payment. Mr. Snyder was a subcontractor and as long as he refused to sign the release defendant could not get his money from the Jomarly Corporation. Snyder was then giving up a real right, a real hold he had on defendant, when he signed the release of liens. This was something of value which he gave up when he signed the release in consideration of the check.

Defendant, as an additional reason in support of the motion, avers that no written demand was made of him to make the check good within 10 days. The following appears on page 16 of the notes:

"Q. Did you ever request that he pay you?

"A. Yes sir.

"Q. Will you tell us how you requested that he pay you?

"A. Telephone calls, personal visits, letters from my attorney.

"Q. What did the defendant say when you talked to him over the telephone?

"A. Made promises to make it good and pay. In fact one day he called me and said he had the money and was coming over the following day to pay me. He came over to the office, but he didn't have any money."

We are of the opinion that the requirement of 10 days written notice was met, but even if the requirement was not technically met, we are of the opinion that defendant by his conduct and his promises waived the requirement of written notice to pay.

And now, September 24, 1957, the motion in arrest of judgment is overruled and defendant is directed to appear in Court Room "B" on Friday, October 4, 1957, at 10 a.m. to receive the sentence of the court.